IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNRAY PETERS, SR.                    *
                                     *
v.                                   *       Civil No. WMN-13-3114
                                     *
BALTIMORE CITY BOARD                 *
OF SCHOOL COMMISSIONERS              *
                                     *
                                     *
  *     *     *     *     *     *     *     *     *     *     *     *     *     *     *

## MEMORANDUM AND ORDER

This case relates to alleged employment discrimination by Defendant Baltimore City Board of School Commissioners against Plaintiff Unray Peters, Sr.  Plaintiff alleges that he suffered multiple workplace injuries while employed by Defendant, and, as a result, is permanently disabled.  He asserts that, as a result of his disability, he is restricted in the type of work that he can perform.  He requested employment that would accommodate his disability, but was not permitted by Defendant to return to work in a suitable position.  Instead, Defendant subjected Plaintiff to constructive termination/retirement.  Plaintiff asserts that such action constituted discrimination on the basis of his age and disability and that Defendant failed to reasonably accommodate his disability.

Before the Court are three Motions: (1) a Motion for Partial Reconsideration, ECF No. 22, filed by Plaintiff; (2) a Motion to Quash or for Protective Order, ECF No. 25, also filed

1

by Plaintiff; and (3) a Motion to Strike Plaintiff's Expert
Report and Preclude Expert Testimony by Dawn Haag-Hatterer, ECF
No. 20, filed by Defendant.  For the reasons stated herein, the
Court determines that no hearing is necessary, Local Rule 105.6;
the Motion for Partial Reconsideration will be denied; the
Motion to Quash or for Protective Order will be granted in part;
and the Motion to Strike Expert Report will be granted in part.

## I.  **Motion for Reconsideration**

Plaintiff previously filed a Motion for Leave to Amend his
Complaint, seeking to add a sex discrimination claim, as well as
to clarify his disability claim with respect to retaliation and
to correct certain dates in his original complaint.  ECF No. 11.
The Court issued a Memorandum and Order, see ECF No. 18,
granting leave to amend as to the correction of dates but
denying leave as to both the sex discrimination and retaliation
claims.

With respect to that portion of Plaintiff's Motion seeking
to "clarif[y] . . . his retaliation allegation regarding his
disability claim," ECF No. 22 at 1, the Court determined that
Plaintiff failed to exhaust his administrative remedies.
Specifically, the Court noted that neither retaliation, nor any
facts lending themselves toward a retaliation claim, were noted
in Plaintiff's EEOC charge.  ECF No. 18 at 6-7.  The Court
declined to treat Plaintiff's intake questionnaire as a part of

the EEOC charge document, <u>see id.</u> at 6 (citing <u>Cohens v.</u>
<u>Maryland Dept. of Human Resources</u>, 933 F. Supp. 2d 735, 744 (D.
Md. 2013); <u>Park v. Howard Univ.</u>, 71 F.3d 904, 909 (D.C. Cir.
1995)), but considered "whether Plaintiff's claim that he was
retaliated against for requesting a reasonable accommodation
[was] 'reasonably related' to his EEOC charge, 'such that it
would have reasonably been expected to follow from an
administrative investigation of that charge.'" <u>Id.</u> at 6-7
(quoting <u>Miles v. Dell, Inc.</u>, 429 F.3d 480, 492 (4th Cir.
2005)). Noting that Plaintiff knew of his retaliation claim at
the time he filed his EEOC charge and that the basis for his
retaliation claim was different in fact and substance than those
listed in the EEOC charge, the Court found that Plaintiff failed
to exhaust his administrative remedies and denied leave to amend
on that ground. <u>Id.</u>

Plaintiff now seeks reconsideration of that portion of the
Court's Order. In arguing for reconsideration, Plaintiff
presents no new legal arguments, but rather contends primarily
that (1) plaintiffs may raise retaliation claims for the first
time in federal court, <u>see</u> ECF No. 22 at 2-3 (quoting <u>Nealon v.</u>
<u>Stone</u>, 958 F.2d 584, 590 (4th Cir. 1992)); and (2) because the
facts in the charge lent themselves to a retaliation claim, this
Court was unreasonably harsh in denying Plaintiff's Motion for
Leave to Amend due to, in effect, his failure to check the

3

"retaliation" box on his charge.  See id. at 3-6.  In addition,
Plaintiff introduces a new document, Plaintiff's Rebuttal to
Baltimore City Public Schools' Position Statement, ECF No. 22-1,
which he asserts demonstrates that he "clearly asserted facts
that could be construed to imply nothing but an accusation of
retaliation."  ECF No. 22 at 5.

　　　In asserting that a retaliation claim may be brought for
the first time in federal court, Plaintiff relies primarily on
the Fourth Circuit's decision in Nealon v. Stone, 958 F.2d 584
(4th Cir. 1992).  In Nealon, the Fourth Circuit considered
whether the plaintiff's Title VII claim of retaliation, which
was premised on alleged retaliation for filing her EEOC charge,
was barred for failure to exhaust administrative remedies where
the plaintiff failed to allege it in her administrative charge.
Id. at 590.  Reasoning that such retaliation was "like or
related to allegations contained in the charge and growing out
of such allegations during the pendency of the case before the
Commission," the Court held that the plaintiff did not need to
separately exhaust her administrative remedies to assert her
retaliation claim.  Id. (quoting Hill v. Western Electric Co.,
672 F.2d 381, 390 n.6 (4th Cir. 1982)).

　　　Plaintiff's reliance in Nealon is misplaced.  Nowhere in
Nealon does the Fourth Circuit suggest that all claims of
retaliation are exempt from the requirement that the plaintiff

4

exhaust administrative remedies.  To the contrary, <u>Nealon</u>, as well as other authority from this circuit, <u>see, e.g.,</u> <u>Carter v. Rental Uniform Serv. of Culpeper, Inc.</u>, 977 F. Supp. 753, 758 (W.D. Va. 1997), appear to be limited to claims of retaliation that arose subsequent to the filing of EEOC charge.  <u>See also Jones v. Calvert Grp., Ltd.</u>, 551 F.3d 297 (4th Cir. 2009).

Here, unlike in <u>Nealon</u>, Plaintiff does not allege retaliation for having filed his EEOC charge, as he had separated from his employment with Defendant prior to the filing of his charge.  Further, there is no indication from the documents provided by Plaintiff – including the document attached to his Motion for Reconsideration – that Defendant was on notice of a retaliation claim during the EEOC process.  Upon reviewing those documents, the Court does not find that the facts clearly imply an accusation of retaliation.  Plaintiff points to no specific provision in his Rebuttal to Baltimore City Public Schools' Position Statement in which he asserts a claim of retaliation, and, indeed, the document – which was drafted by his attorney – specifies only discrimination-related claims as grounds for his claim, including for his discharge. <u>See, e.g.,</u> ECF No. 22-1 at 1 (alleging that his termination/retirement resulted from discrimination on the basis of his disability and/or age).  Nowhere does it allege that Defendant retaliated against Plaintiff for requesting a

reasonable accommodation.  Thus, because Plaintiff's EEOC charge did not include facts asserting retaliation, and retaliation was not "reasonably related to the original complaint," Plaintiff did not exhaust his administrative remedies as to retaliation. See generally Johnson v. Portfolio Recovery Assocs., LLC, 682 F. Supp. 2d 560 (E.D. Va. 2009).  The Motion for Reconsideration will therefore be denied.

## II.  **Motion to Quash**

Plaintiff has also filed a Motion to Quash Third Party Subpoenas and for Protective Order to Preclude Use of Improperly Obtained Employment Records, ECF No. 25, in which he seeks to quash subpoenas issued to two third-party employers for whom he worked subsequent to his employment with Defendant.  The subpoenas at issue, directed toward non-parties Schools Sisters of Notre Dame and the University of Maryland, requested the following:

> 1.   Any and all documents relating to Unray M. Peters . . ., including Unray Peters' complete personnel file and any and all documents, notes, diaries, logs, memoranda, letters, correspondence, statistics, interoffice and interoffice [sic] communications, emails, notations of any sort of conversations, computer printouts, printed matter, worksheets or other documents, recordings or communications regarding Unray Peters of whatever nature, including documents either generated or maintained by management, human resources, employee benefits, workers' compensation, or supervisory personnel; and regarding any aspect of his hiring, employment and/or termination.

> 2.   Any and all documents relating to Unray Peters'
> payroll history, including any and all wages and
> benefits earned, accrued and paid while in your
> employment, including any wages and benefits paid to
> Unray Peters post-employment.

ECF No. 25-1.  Plaintiff objects to those subpoenas, arguing

that (1) they are an improper means for obtaining documents

previously sought through objected-to production requests, and

(2) they are overly broad, intrusive, irrelevant, and create a

"chilling" effect on Plaintiff's employment.

Discovery rules are liberally construed.  Herbert v. Lando,

441 U.S. 153, 177 (1979).  Under Rule 26 of the Federal Rules of

Civil Procedure, "[p]arties may obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or

defense."  Fed. R. Civ. P. 26(b)(1).  "Relevant information need

not be admissible at trial if the discovery appears reasonably

calculated to lead to the discovery of admissible evidence."  In

re Coventry Healthcare, Inc., ERISA Litigation, 290 F.R.D. 471,

473 (D. Md. 2013) (quoting EEOC v. Freeman, Civ. No. RWT-09-

2573, 2012 WL 3536752, at *1 (D. Md. Aug. 14, 2012)).  The party

resisting production of information bears the burden of

establishing that the discovery requests should not be granted.

See Brey Corp. v. LQ Mgmt., LLC, No. AW-11-cv-00718, 2012 WL

3127023, at *4 (D. Md. Jul. 26, 2012).

Defendant does not dispute that, notwithstanding that the

subpoenas at issue are directed toward third parties, Plaintiff

has standing to file the present motion to quash and/or for protective order.  See, e.g., United States v. Idema, 118 F. App'x 740, 744 (4th Cir. 2005) ("Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena.").  Defendant argues, however, that (1) Plaintiff's Motion to Quash is moot; (2) the documents are properly obtainable from third parties, notwithstanding Plaintiff's previous objections, because they are within the sole possession of the third parties; and (3) the documents sought are relevant.

Although the subpoena recipients have already provided to Defendant the information requested in the subpoenas, Plaintiff's Motion to Quash is not moot.  Plaintiff's Motion was timely filed, prior to the third parties' response to the subpoenas, and also requests a protective order.  Even though Defendant is now in possession of the information at issue, the Court may still order Defendant to return and/or prohibit Defendant from using that information.  See, e.g., Sony Music Entertainment Inc. v. Does 1-40, 326 F. Supp. 2d 556, 561 (S.D.N.Y. 2004).

As grounds for quashing the subpoenas, Plaintiff first argues that the third party subpoenas "are not a proper means for obtaining documents previously sought through production

requests, which Plaintiff objected, and Defendant did not move
to compel their production." ECF No. 25 at 4 (citing Mezu v.
Morgan State Univ., 269 F.R.D. 565, 581-82 (D. Md. 2010)).
Specifically, Plaintiff notes that Defendant previously
requested information from Plaintiff in a Rule 34 discovery
request; Plaintiff objected to the request; the parties did not
confer to resolve the dispute; and Defendant has not filed a
motion to compel the information originally sought. See Fed. R.
Civ. P. 37(a)(1); Mezu, 269 F.R.D. at 581-82.  Plaintiff asserts
that Defendant's use of the instant subpoenas is an attempt to
circumvent the proper resolution of their discovery dispute.
ECF No. 25 at 4-5; see generally Richardson v. Sexual
Assault/Spouse Abuse Research Ctr., Inc., 270 F.R.D. 223, 225-26
(D. Md. 2010).

    Defendant's previous discovery request sought for Plaintiff
to produce "[a]ll documents . . . pertaining to any income that
you earned or compensation you received from any source other
than Defendant since January 1, 2006." ECF No. 39-1 at 3.
Plaintiff objected, stating that information regarding tax
returns, W-2s and 1099 forms is privileged and that the request
was "overbroad and unduly burdensome," but eventually
supplemented his objections with copies of W-2s and 1099s for
his employment with the two third parties at issue.  Thus, to
the extent that Plaintiff objects to Defendant's third party

9

request, it appears limited to the W-2 and/or other payroll records requested from the third parties.  To the extent that Plaintiff asserts a continued objection to Defendant's request to payroll documents on the basis of privilege after disclosing those documents voluntarily to the Defendant, the Court finds such objections without merit.[1]  Defendant is permitted generally to request information from a third party, regardless of whether it has also been requested from Plaintiff, so long as it is not unreasonably duplicative, see, e.g., EEOC v. Windmill Int'l Inc., Civ. No. 11-cv-454-SM, 2012 WL 3583436, at *3 (D.N.H. Aug. 20, 2012); a stipulated confidentiality order has been entered, see ECF No. 42; and no concern has been raised that the issuance of the third party subpoenas were for an improper purpose. See generally Fed. R. Civ. P. 26(g)(1)(B)(ii).

As to Defendant's third party subpoena request more generally, however, the Court agrees with Plaintiff that it is overbroad on its face.  Defendant's request, by seeking "any and all" documents related to his employment, has the potential to uncover intrusive information that is not relevant to the present action.  See, e.g., Singletary v. Sterling Transport

---

[1] Although some documents that were initially requested by Defendant – including tax returns – have been held to be privileged by some courts, W-2s and payroll records are substantially less invasive than tax return documents and are ordinarily discoverable in the employment law context where relevant.  See generally Terwiliger v. York Intern. Corp., 176 F.R.D. 214 (W.D. Va. 1997).

Co., 289 F.R.D. 237, 241-42 (E.D. Va. 2012) (finding that
subpoenas seeking the plaintiff's entire employment file from
former employers, which was "not limited to seeking only those
documents relevant" to his claims were "overly broad on their
face"); Premer v. Corestaff Servs., L.P., 232 F.R.D. 692, 693
(M.D. Fla. 2005) (finding subpoenas issued to former employers
seeking plaintiff's "entire personnel and benefit files, records
relating to her hiring, termination, performance, any
disciplinary action received by her in the course of her
employment, compensation, and benefits, on its face, are
overbroad and not reasonably calculated to lead to the discovery
of admissible evidence").

Although the Court agrees that the request is overbroad, it
also finds that some of the information included in the files
sought by Defendant is relevant to the action.[2]  Defendant claims
that the information sought is relevant because it may bear on
(1) damages incurred; (2) Plaintiff's effort to mitigate his
damages; (3) Plaintiff's alleged emotional and mental anguish;
(4) Plaintiff's ability to work with or without a reasonable
accommodation; and (5) his reasons for leaving his employment
with Defendant.  Because the issue with Defendant's subpoenas is

---

[2] This is not to say that the information sought is necessarily
admissible.  See Singletary, 289 F.R.D. at 241 ("Relevant
information need not be admissible at trial, but it must appear
to be 'reasonably calculated to lead to the discovery of
admissible evidence.'" (quoting Fed. R. Civ. P. 26(b)(1))).

that they are not reasonably tailored toward obtaining relevant material, the Court will narrow the scope of the subpoenas to the following documents, if they exist: employment applications; performance reviews; absence records; records reflecting any requests for accommodation due to disability; payroll records; and records reflecting the reasons for and dates of separation of employment.

This modification narrows the scope of potential discoverable information, while still permitting Defendant to discover evidence relating to damages and mitigation thereof, mental and/or emotional anguish, and Plaintiff's ability to perform his job with or without an accommodation. Accordingly, except as to the information specified above, Plaintiff's Motion to Quash and for Protective Order will be granted. Any information not covered in scope by the above will be subject to a protective order and will not be permitted to be used by Defendant in any way.

### III. **Motion to Strike**

Last, Defendant has filed a Motion to Strike the expert testimony of Plaintiff's expert, Dawn Haag-Hatterer, J.D. Defendant asserts that Haag-Hatterer's opinion is inadmissible because it (1) does not rely on a reliable methodology, in violation of Federal Rule of Evidence 702, and (2) states a

legal conclusion, thereby invading the province of the jury in violation of Federal Rule of Evidence 704(a).

Rule 702 of the Federal Rules of Evidence provides that an expert witness may testify in the form of an opinion or otherwise if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  In Daubert v. Merrell-Dow Pharmaceuticals, 509 U.S. 579 (1993), the Supreme Court held that Rule 702 imposes on a trial judge the gatekeeping obligation to "ensure that any and all scientific testimony . . . is not only relevant, but reliable."  509 U.S. at 589.  In Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), the Court found that this gatekeeping responsibility extends also to expert testimony based on technical or other specialized knowledge.  Id. at 149.  Thus, as to all expert testimony, Rule 702 "establishes a standard of evidentiary reliability."  Id. (quoting Daubert, 509 U.S. at 590).

In Daubert, the Court set forth a list of non-exhaustive factors that bear on the trial court's assessment of the reliability of expert testimony, including whether the theory

has been tested, has been subjected to peer review and
publication, the known or potential rate of error, and whether
the theory has been generally accepted in the relevant
community.  509 U.S. at 592-94.  The trial court, however, has
latitude in deciding both how to test an expert's reliability
and determining whether the testimony is reliable.  Kumho Tire,
526 U.S. at 152.  Where, as here, the expert testimony at issue
is based purely on experience, it may be useful to the Court to
ask "whether his [or her] preparation is of a kind that others
in the field would recognize as acceptable."  Id. at 151.  The
party offering the evidence bears the burden of proving
admissibility by a preponderance of the evidence.  Daubert, 509
U.S. at 592-93.

Haag-Hatterer's testimony is based only on her personal
experience as a human resources professional.  See generally
Fed. R. Evid., Advisory Committee Notes, 2000 Amendments ("Rule
702 expressly contemplates that an expert may be qualified on
the basis of experience.  In certain fields, experience is the
predominant, if not sole, basis for a great deal of reliable
expert testimony.").  Defendant does not argue that Haag-
Hatterer is unqualified to offer an opinion as to human
resources practice, but instead contends that, as set forth in
her expert report, Haag-Hatterer's testimony is neither reliable
nor helpful to the jury.

Experts who rely solely or primarily on experience must explain "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.  The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"  2000 Amendments; see, e.g., Arjangrad v. JPMorgan Chase Bank, N.A., No. 3:10-cv-01157-PK, 2012 WL 1890372, at *5 (D. Or. May 23, 2012); Parton v. United Parcel Serv., No. 1:02-cv-2008-WSD, 2005 WL 5974445, at *5 (N.D. Ga. Aug. 2, 2005).  Thus, although a trial court need not methodically check through the factors listed in Daubert where those factors may not be applicable, it must still make a determination of reliability prior to admitting expert testimony.

Haag-Hatterer's expert report gives an overview of the law and relevant statutes regarding this dispute.  She states that her opinion is based, "to a reasonable degree of certainty on the facts, [her] education and expertise in the area of Human Resources, Title VII, Americans with Disabilities Act ('ADA'), Age Discrimination in Employment Act ('ADEA'), Workers' Compensation law, and [her] expertise in formulating, adopting and consistently applying federal and state regulations and best practices."  ECF No. 20-2 at 7.  In formulating her opinion, she relied on documents relating to Plaintiff's lawsuit (not

including his deposition), medical records, and job search documents, see id.; apparently performed some legal research; and arrived at her conclusions.

Although Haag-Hatterer notes that human resources professionals are responsible for maintaining consistency in an employer's operational practices and ensuring legal compliance with employment-related regulations, she does not explain how she reached her conclusions or how her experience has informed the conclusions that Defendant violated the statutes at issue.[3] In short, her opinion largely asks the Court and the jury to take her word for the conclusions that she reaches.

Even assuming that her opinion was sufficiently reliable, however, the majority of her testimony, as set forth through her expert report, would nonetheless be inadmissible.  Under Federal Rule of Evidence 704, expert testimony as to legal conclusions is generally inadmissible.  See, e.g., Sun Yung Lee v. Clarendon, 453 F. App'x 270, 278 (4th Cir. 2011) ("While expert witnesses may testify as to the ultimate matter at issue, Fed. R. Evid. 704(a), this refers to testimony on ultimate facts;

---

[3] More generalized portions of Haag-Hatterer's opinion – for example, her review of the employment file, the presence or absence of documents and the import of such, and general human resources practices in maintaining such documents or files may meet the standards for admissibility of expert testimony.  There is no discernable connection in her expert report, however, between such information and her ultimate conclusions that Defendant violated the applicable statutes, other than legal analysis.

16

testimony on ultimate questions of law, i.e., legal opinions or conclusions, is not favored." (quoting Anderson v. Suiters, 499 F.3d 1228, 1237 (10th Cir. 2007))); United States v. McIver, 470 F.3d 550, 562 (4th Cir. 2006) ("[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible."). In determining whether an expert opinion proffers an improper legal conclusion, the Court must consider whether "the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." McIver, 470 F.3d at 562 (quoting United States v. Barile, 286 F.3d 749, 760 (4th Cir. 2002)).

Haag-Hatterer's expert report is replete with citations to statutes and case law interpreting those statutes, as well as application of the facts of Plaintiff's claims to the law as she states it. Her report contains, among others, the following conclusions:

> (1) Defendant "refused to accommodate Plaintiff's disability . . . [which] constituted discrimination under the Americans with Disabilities Act," ECF No. 20-2 at 14;
>
> (2) "Defendant purposefully, willingly, and knowingly refused to accommodate light duty restrictions for the Plaintiff although precedent had been established through previous accommodations. It is also my professional opinion that Defendant unlawfully discriminated against Plaintiff based on his incurred disabilities as a result of workplace injuries, as a result of Plaintiff using Defendant's Workers

17

Compensation system,[4] and as a result of Plaintiff's age of more than 40 years," id.;

(3) "common law protects Plaintiff from retaliatory discharge," id. at 15;

(4) "Using the reasonable person standard, it is reasonable to identify a cause-and-effect relationship between the Plaintiff's third workplace injury, [Human Resource Manager] Mr. Young's 'accident prone' comment, and Plaintiff's subsequent discharge from employment.  It is my professional opinion that the Defendant discharged Plaintiff as a retaliatory move against his incurring a third workplace injury and for filing a Workers' Compensation claim under the protection provisions of the ADA, the ADEA and Title VII," id.; and

(5) "[I]t is my professional opinion that [Defendant] willfully and knowingly discriminated against [Plaintiff] and inconsistently offered work accommodations only when it best suited their own motives."  Id. at 18.

Haag-Hatterer's proposed expert testimony impermissibly invades the province of both the judge and the jury.  Assuming that her testimony would mirror her report, her opinion expressly tells the jury what result to reach, in her capacity as an attorney and human resources professional, and as a result of her purported expertise in applying the aforementioned statutes.  See, e.g., United States v. Chapman, 209 F. App'x 253, 269 (4th Cir. 2006) ("Generally, the use of expert testimony is not permitted if it will usurp either the role of the trial judge in instructing the jury as to the applicable law

---

[4] The Court doubts the relevance of Haag-Hatterer's workers' compensation-based conclusions, as those are not, based on the Complaint, at issue in this case.

or the role of the jury in applying that law to the facts before

it.  When an expert undertakes to tell the jury what result to

reach, this does not aid the jury in making a decision, but

rather attempts to substitute the expert's judgment for the

jury's." (quoting United States v. Duncan, 42 F.3d 97, 101 (2d

Cir. 1994))); United States v. Perkins, 470 F.3d 150, 158 (4th

Cir. 2006) (expert testimony involving "the use of terms with

considerable legal baggage . . . nearly always invades the

province of the jury"); Berckeley Inv. Grp., Ltd. v. Colkitt,

455 F.3d 195, 217 (3d Cir. 2006) ("[T]he District Court must

ensure that an expert does not testify as to the governing law

of the case.").

        As noted supra, however, although Haag-Hatterer's report

contains multiple assertions that are unreliable and/or

impermissible legal conclusions, there are some portions of

Haag-Hatterer's testimony that may be admissible.  See supra

n.2.  The Court finds it premature, as Haag-Hatterer has not yet

been deposed, to strike her opinion in its entirety.  Therefore,

the Court will grant the Motion to Strike in part.  Haag-

Hatterer will not be permitted to testify regarding her

"overview" of the relevant statutes or the state of the law, nor

will she be permitted to offer any legal conclusions, as those

are impermissible because they are unreliable and invade the

province of the jury.  To that extent, her expert report will be

stricken.  More generalized testimony regarding factual – not
legal – conclusions related to her human resources experience,
however, <u>may</u> be admissible.  Plaintiff is cautioned, however,
that the Court is reserving its determination as to the
admissibility of Haag-Hatterer's factual conclusions, that the
bulk of her expert report is troublesome, and that, should her
deposition testimony offer the same type of analysis as
discussed above, her testimony is likely to be stricken in its
entirety.  Thus, pending Haag-Hatterer's deposition testimony,
it may be appropriate to revisit this issue as a trial date
nears.

**IV.   <u>CONCLUSION</u>**

For the reasons stated herein, IT IS this 20th day of
August, 2014, by the United States District Court for the
District of Maryland, hereby ORDERED that:

1) Plaintiff's Motion for Partial Reconsideration, ECF No. 22,
   is DENIED;

2) Plaintiff's Motion to Quash or for Protective Order, ECF
   No. 25, IS GRANTED IN PART in that:

   a. The third-party subpoenas are modified to permit
      discovery of employment applications; performance
      reviews; absence records; records reflecting any
      requests for accommodation due to disability; payroll

records; and records reflecting the reasons for and dates of separation of employment only; and

 b. To the extent that the information produced by the third parties exceeds the scope of permitted discovery, that information will be subject to a protective order and may not be used by Defendant;

3) Defendant's Motion to Strike Plaintiff's Expert Report and Preclude Expert Testimony by Dawn Haag-Hatterer, ECF No. 20, is GRANTED IN PART in that, to the extent Haag-Hatterer's expert report states an overview of the law or offers legal conclusions, it is STRICKEN and she will not be permitted to testify as to those issues; and

4) The Clerk of Court shall transmit a copy of this Memorandum and Order to all counsel of record.


        /s/
      William M. Nickerson
      Senior United States District Judge